## Paul T. Ulle, Appellant, *v.* Miriam Ulle.

*Divorce—Adultery—Evidence—Insufficiency.*

In an action for divorce on the ground of adultery, the decree of the lower court, refusing a divorce will be sustained, where there was contradictory evidence and a positive denial of the parties charged with having committed the offense, together with the corroboration of their alibi by reputable witnesses, some of whom were disinterested. Under such circumstances, the evidence is not sufficiently clear or satisfactory to warrant a finding in libellant's favor.

Argued April 27, 1923. Appeal, No. 47, Oct. T., 1923, by libellant, from decree of C. P. Berks County, Feb. T., 1922, No. 17, refusing a divorce in the case of Paul T. Ulle v. Miriam Ulle. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Libel in divorce. Before ENDLICH, P. J.

The case was referred to J. Milton Miller, Esq., as master who recommended that a decree of divorce be entered in favor of the libellant. On exceptions to the

368   PAUL T. ULLE, Appellant, *v.* MIRIAM ULLE.

master's report the court sustained the exceptions and refused the divorce.   Libellant appealed.

*Error assigned* was the order of the court.

*W. B. Bechtel,* for the appellant.—It is not necessary to prove the direct fact of adultery.   It may be presumed from circumstances, such as lead the mind to its belief, by a fair inference, as a necessary conclusion: 14 Cyc. page 693; Matchin v. Matchin, 6 Pa. 332; Brown on Divorce, page 48; Hilton v. Hilton, 66 Pa. Superior Ct. 378; McCune v. McCune, 31 Pa. Superior Ct. 248; King v. King, 75 Pa. Superior Ct. 19.

*H. P. Keiser,* for the appellee.

OPINION BY TREXLER, J., July 12, 1923:

The husband asks for a divorce on the ground of the wife's adultery.   The master recommended a decree in his favor, the learned president judge of the court below refused the divorce.

The testimony in support of the charge is that on two occasions the wife and a male companion were seen in an automobile in the City of Reading and that they drove to a lane in the country where they remained together with the lights of the machine extinguished for the space of an half hour each time.   We think the learned judge of the court below correctly summarized the situation presented, if we accept the view that if it be a fact "that the respondent and her paramour remained together in his automobile at a dark and lonesome spot for a period of half an hour, [it] admits of but one reasonable conclusion, the answer is that, in the face of all the record contains opposing it and the failure of credible positive proof supporting it, the respondent's guilt cannot be regarded as adequately proven, but must be rejected as not sufficiently established."

When we turn to the testimony we find that the wife and the man who was said to have been with her, abso· lutely deny that any such meetings ever took place. The dates fixed were September 26 and October 4, 1921, be· tween 9 and 10 o'clock at night. Mrs. Ulle, the respond· ent, had engaged the services of Nagle who was a licensed detective for the purpose of watching her husband, who, she suspected, was unfaithful to her. She asserts that on the night of the 26th of September she was at a lawyer's office in Reading consulting her counsel as to a habeas corpus proceeding relating to the custody of her child. She left the office at 9 o'clock in company with Nagle, her alleged paramour, and her brother. Nagle left them and she got home at 9:15, where her sister was at the time. On the 4th of October she was visiting friends on Pine Street remaining there from 8 o'clock until midnight. Her sister corroborates her as to the hour she came home on September 26th and it is admitted that she was at the lawyer's office. Her sister also corroborates her as to the occurrences on October 4th. She states that Mrs. Ulle left the house in company with the woman at whose house she spent the evening. There was further corroboration by her brother, a Mrs. Winters and the woman and her husband at whose house she visited. The dates were fixed in the minds of the witnesses by relation to the habeas corpus proceedings, which had been the subject of reference in the conversation between the par· ties present.

The libellant testified that he had followed his wife and her companion on the two occasions above referred to. He called to corroborate his story Geo. Schaeffer, Walter Boyer, and Theodore Troup. Fred Pordham was also in the party. Troup's testimony was taken at the Homeopathic Hospital in the City of Reading. He stated that both nights were pleasant and fair, the moon was shining; that he with the others went 75 feet into the lane, and he then went close to the automobile in which Mrs. Ulle and her companion were, which was

about 150 to 200 feet in the lane and saw them loving each other.   He claimed that his memory was affected by the condition of his health.   The car was a closed car and the lights were out.   It was shown by the records of the weather bureau that on September 26th the moon was in its last quarter and that on October 4th it was cloudy and raining.   The witness could not have seen the parties in the closed car.   Pordham, one of the parties made an affidavit in an attorney's office in which he stated facts in accord with the narration of the other witnesses of the libellant, but later stated that libellant had asked him to help him out; that it is true they had gone into the country but the whole thing was staged; they were not following any one.   With this maze of contradiction and with the positive denial of the parties accused together with the corroboration of their alibi by reputable witnesses, most of them not interested in the case, we come to the conclusion that the evidence is not clear or satisfactory enough to warrant a decree in libellant's favor.

The decree of the lower court is affirmed.   Appellant to pay the costs.